HOLLEY DRIGGS
Stacy H. Rubin, Esq. (NV Bar No. 9298)
Email: srubin@nevadafirm.com
R. McKay Holley, Esq. (NV Bar No. 15934)
Email: mholley@nevadafirm.com
300 South Fourth Street, Suite 1600
Las Vegas, Nevada 89101
Telephone: 702/791-0308
Facsimile:  702/791-1912

*Attorneys for Kathryn Silverton,
trustee and beneficiary of the Loretta M.
Kuhn Revocable Trust*

DEMETRAS LAW
J. Craig Demetras, Esq. (NV Bar No. 4246)
Email: jcd@demetraslaw.com
230 E. Liberty Street
Reno, Nevada 89501
Telephone: 775/348-4600

*Attorneys for Debtor*

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>PHILIP ANDREW MACKEN,<br><br>Debtor. | Case No. 23-50950-hlb<br>Chapter 13<br><br>JOINT MOTION TO APPROVE COMPROMISE UNDER RULE 9019<br><br>Hearing Date:      April 30, 2024<br>Time of Hearing:  2:30 p.m.<br><br>Judge: Hon. Hilary L. Barnes |

Kathryn Silverton, as trustee and beneficiary of the Loretta M. Kuhn Revocable Trust ("Silverton"), by and through counsel of record, and Philip Andrew Macken ("Debtor") by and through counsel of record (together referred as the "Parties"), hereby submit this Joint Motion to Approve Settlement Agreement ("Motion"), asking the Court to approve a Global Settlement Agreement and Release (the "Settlement Agreement") reached between Debtor, Silverton, and the Loretta M. Kuhn Revocable Trust, attached as Exhibit 1 to Silverton's declaration.[1]

In summary, the Settlement Agreement provides for a nearly fifty percent (50%) recovery for the Loretta M. Kuhn Revocable Trust and complete resolution of Silverton's claims against

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Bankruptcy Procedure will be referred to as "FRBP." The Local Rules of Practice for the United States Bankruptcy Court for the District of Nevada shall be referred to as the "Local Rules".

15746-02/3083189.docx

Debtor that would otherwise be nondischargeable. The Settlement Agreement also provides a mutual release between the Parties, allowing Debtor to obtain a fresh start. The Settlement Agreement will also ensure that all creditors will receive a 100% distribution on their claims through Debtor's Chapter 13 Plan. As such, there is little if any negative impact on the bankruptcy estate.

This Motion is supported by the Memorandum of Points and Authorities herein; the declaration of Rebecca F. Zipp, Esq. ("Zipp Decl.") filed concurrently herewith pursuant to LR 9014(c); the Debtor's Response to Silverton's Motion For Relief From the Automatic Stay, ECF No. 44, incorporated by reference herein, the papers and pleadings on file in this bankruptcy Case, judicial notice of which is respectfully requested pursuant to FRE 201(b) and (c) and 1101(a) and (b); any oral argument the Court may entertain at hearing on the Motion; and any further evidence and argument the Court may take in the event the Court sets an evidentiary hearing on the Motion.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### **I.     STATEMENT OF FACTS**

1. On December 15, 1989, Loretta M. Kuhn (the "Settlor"), established the Loretta M. Kuhn Revocable Trust (the "Trust"). *See* Zipp Decl. ¶ 4.

2. On March 17, 2011, the Settlor amended and restated the Trust in its entirety. *See* Zipp Decl. ¶ 5.

3. On November 30, 2011, the Settlor amended the Trust by executing a First Amendment and a Second Amendment. *See* Zipp Decl. ¶ 6.

4. The restated Trust, together with the First Amendment and Second Amendment, collectively, (the "Trust"), is domiciled in San Diego County, California. *See* Zipp Decl. ¶ 7.

5. Debtor was appointed successor trustee to the Trust on or around February 2018 after the Settlor was no longer able to manage her affairs. *See* Zipp Decl. ¶ 8.

6. As successor trustee, Debtor sold Settlor's primary San Diego residence for approximately $1,000,000.00, ostensibly to fund her residence at Country Gardens, a retirement

1  community located in San Diego County. Debtor paid a total of approximately $170,000.00 of
2  Trust res to Country Gardens until Settlor passed away in June 2020. *See* Zipp Decl. ¶ 9.

3        7.     In August 2020, Silverton sought an explanation from Debtor as to a discrepancy
4  in the Trust's assets because there were no funds remaining in the Trust from the sale of the San
5  Diego residence. Debtor did not provide a satisfactory explanation. *See* Zipp Decl. ¶ 10.

6        8.     In January 2021, Silverton demanded an accounting from Debtor in an effort to
7  obtain more information because of the unexplained discrepancy. Debtor has never provided an
8  accounting. *See* Zipp Decl. ¶ 11.

9        9.     Silverton retained the law firm of Seltzer Caplan McMahon Vitek, which sent
10  Debtor a demand letter in March 2021, demanding, among other things, an accounting. No such
11  accounting was ever provided in response to said demand letter. *See* Zipp Decl. ¶ 12.

12  **S<small>AN</small> D<small>IEGO</small> L<small>ITIGATION</small>**

13        10.    In June 2021, Silverton initiated the San Diego Litigation in the Superior Court of
14  the State of California in and for the County of San Diego Probate Department. *See* Zipp
15  Decl. ¶ 13.

16        11.    On February 4, 2022, the San Diego Superior Court granted Silverton's order for
17  Debtor, as then-existing trustee of the Trust, to account for his administration of the Trust and to
18  file his account with that court. In defiance of that lawful court order, no such accounting was ever
19  provided to the San Diego Superior Court. *See* Zipp Decl. ¶ 14.

20        12.    In April 2022, Debtor resigned as trustee of the Trust. To date, no accounting has
21  been provided either to Silverton or to the San Diego Superior Court. *See* Zipp Decl. ¶ 15.

22        13.    In May 2023, Silverton propounded discovery on Debtor in the San Diego
23  Litigation, to which Debtor provided only partial responses in June and July 2023. Silverton
24  ascertained from those responses that, by transferring hundreds of thousands of dollars from the
25  Trust into personal bank accounts controlled by Debtor and held for his benefit, Debtor had likely
26  committed, among other things, financial elder abuse in violation of California law. Debtor
27  subsequently provided further discovery responses in or around November 2023. *See* Zipp
28  Decl. ¶ 16.

15746-02/3083189.docx

14. On July 6, 2023, Silverton filed a *First Amendment to Petition For: (1) Accounting, (2) Removal of Trustee and Appointment of Successor Trustee, (3) Surcharge of Trustee, (4) Appointment of Temporary Trustee, (5) Recovery of Trust Property From Trustee; (6) Financial Elder Abuse; (7) Damages under Prob. Code §859; and Attorneys' Fees and Costs* in the San Diego Litigation (the "Amended Petition"). *See* Zipp Decl. ¶ 17.

15. On July 7, 2023, Debtor executed a Quitclaim Deed to the benefit of his wife, Dolores Webb Macken ostensibly conveying his entire interest in his residence at 1440 Stonegate Court, Gardnerville, Nevada 89410 ("Debtor's Residence") for no consideration. *See* Zipp Decl. ¶ 18.

16. On July 31, 2023, the San Diego Superior Court conducted a one-day trial on the issue of Debtor's breach of fiduciary duty. The evidence adduced at trial showed that Debtor had transferred approximately $660,000.00 to himself, ostensibly for his trustee fees. A ruling on this first trial is pending. *See* Zipp Decl. ¶ 19.

17. In September 2023, the San Diego Superior Court issued a Temporary Protective Order, enjoining Debtor from transferring substantial assets, including funds in various bank accounts and his real property in Nevada. *See* Zipp Decl. ¶ 20.

18. In October 2023, Dolores Webb Macken executed a Quitclaim Deed ostensibly conveying her purported interest in the Debtor's Residence to herself and Debtor as Joint Tenants with the Right of Survivorship. *See* Zipp Decl. ¶ 21.

19. On October 19, 2023, Silverton filed her First Amended Complaint in the Ninth Judicial District of the State of Nevada, Douglas County (the "Douglas County Litigation"), asserting claims for fraudulent transfer and fraud against Debtor. *See* Zipp Decl. ¶ 22.

20. Also in October 2023, Silverton recorded a *lis pendens* against Debtor's Residence to prevent Debtor from further obfuscating title in anticipation of an adverse judgment. *See* Zipp Decl. ¶ 23.

21. In August 2023, the San Diego Superior Court scheduled a second trial date for December 18, 2023, to hear the remaining issues raised for the first time in Silverton's Amended Petition. *See* Zipp Decl. ¶ 24.

15746-02/3083189.docx

1   22.   The San Diego Superior Court held a Trial Readiness Conference on December 8, 2023. *See* Zipp Decl. ¶ 25.

23.   On December 14, 2023, Debtor filed for Chapter 13 relief. *See* ECF No. 1.

24.   Debtor listed Silverton and the Loretta M. Kuhn Revocable Trust as creditors with disputed claims against the estate. *See* Schedule E/F ECF No. 1, ¶¶ 4.20, 4.22.

25.   As a result of Debtor's bankruptcy filing, the San Diego Superior Court took the December 18 trial off calendar and set for status conference the San Diego Litigation for February 2, 2024. *See* Zipp Decl. ¶ 28.

26.   The San Diego Superior Court informed Silverton that it would reschedule the trial at the February status conference should Silverton obtain relief from the automatic stay before the February status conference. *See* Zipp Decl. ¶ 29.

27.   The next status conference in the San Diego Litigation is set for October 4, 2024. *See* Zipp Decl. ¶ 30.

28.   On February 6, 2024, Silverton filed her Motion for Relief from the Automatic Stay to Proceed with Litigation in San Diego Superior Court Probate Department and for Waiver of 14-Day Stay Under FRBP 4001(a)(3). *See* ECF No. 33.

29.   On February 8, 2024, Silverton filed her Proof of Claim in the amount of $2,180,000.00. *See* Claim No. 15.

30.   On March 6, 2024, the Parties executed the Settlement Agreement, which memorializes the terms of a global settlement and resolves multiple pending and future litigation among and between Silverton, the Trust, and Debtor. *See* Zipp Decl. ¶ 33.

31.   The terms of the Settlement Agreement are as follows:

    a.   Debtor will market and sell his residence located at 1440 Stonegate, Gardnerville, Nevada 89410 (the "Property") for $2,498,000.00;

    b.   Silverton will file a Proposed Order Approving the Global Settlement Agreement with the San Diego Superior Court;

    c.   Regardless of the sale amount, $874,000.00 in sale proceeds will remain in escrow and will be paid directly to Silverton upon further order of the Court;

- 5 -

d. Silverton will retain a $126,000.00 deficiency claim that will be paid through Debtor's Chapter 13 plan on a pro rata distribution;

e. Silverton will dismiss with prejudice the San Diego Litigation against Debtor and Douglas County Litigation against Debtor and Debtor's wife;

f. Silverton and Debtor will mutually release each other from any and all claims, demands, causes of action, and attorneys' fees.

*See* Zipp Decl. ¶ 34.

## II. ANALYSIS

Federal Rule of Bankruptcy Procedure 9019(a) provides:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

In approving a proposed settlement, the Ninth Circuit has identified four factors a Court must consider:

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views . . . .

*See Martin v. Kane (In re A&C Properties)*, 784 F.2d 1377, 1381 (9th Cir. 1986) (citations omitted), *cert. denied, Martin v. Robinson*, 479 U.S. 854 (1986). Bankruptcy courts have great latitude to approve a settlement where the proposed settlement is "fair and equitable." *See In re Cini*, No. 10-62715-13, 2011 WL 4703022 at *4 (Bankr. D. Mont. Oct. 4, 2011) (approving Chapter 13 debtor's motion to approve compromise with creditor) (quoting *Woodson v. Fireman's Fund Ins. Co.*, 839 F.2d 610, 620 (9th Cir. 1988). Here, taking all factors into consideration favors approval of the Motion and the Settlement Agreement.

### A. Probability of Success in the Litigation.

This factor weighs in favor of approving the Settlement Agreement. The probability of success in the Parties' pending litigations is uncertain. Although Silverton is confident in the merits of her claims against Debtor pending in California and Nevada, the pending litigations are

- 6 -

15746-02/3083189.docx

currently stayed by the automatic stay. In the first trial, the San Diego Superior Court has already addressed Debtor's breach of his fiduciary duty as trustee of the Trust by the alleged transfer of $660,000.00 of Trust res to himself, however, that court has not yet made any findings. The court still has not adjudicated damages and other remaining issues from Silverton's Amended Petition. Additionally, any outcome in potential future litigation before this Court regarding the dischargeability of Silverton's claims also remains uncertain.

**B.** **Difficulties, if any, in the Matter of Collection.**

This factor does not appear to be applicable given that any collection efforts would be by Silverton against Debtor's estate. If the Settlement Agreement is not approved, Silverton may face several hurdles to collect against Debtor. First, the automatic stay precludes Silverton from currently obtaining a judgment and will preclude Silverton from collecting on said judgment without prior court approval. Second, according to Debtor's Schedules, there is insufficient nonexempt equity to satisfy Silverton's claims in full.

**C.** **Complexity of Litigation Involved, and the Expense, Inconvenience, and Delay Necessarily Attending it.**

This factor weighs in favor of approving the Settlement Agreement. The claims in the San Diego Litigation are grounded in California probate law. Those claims include application of California law regarding fiduciary duties of a trustee, financial elder abuse, and application California Probate Code § 859's award of double damages. The claims in the Douglas County Litigation are grounded in Nevada law. Those claims include application of Nevada fraudulent transfer and fraud laws.

Upon motion and approval of the Bankruptcy Court, the Debtor must obtain California counsel to complete any pending pretrial litigation in the San Diego Litigation and to litigate the trial on Silverton's Amended Petition. The Douglas County Litigation, on the other hand, is in its infancy, with Debtor filing his Answer a month before he filed his petition. The litigation is necessarily complex and fact intensive given the claims at issue, which means the cost of litigation is high. In fact, Silverton has already incurred over $150,000.00 in legal fees from the San Diego Litigation alone. The Debtor estimates that he has incurred over $70,000 in prepetition legal fees.

- 7 -

15746-02/3083189.docx

Silverton asserts claims against Debtor's estate totaling $2,180,000.00. Because Debtor is proposing a 100% plan to general unsecured creditors, Silverton's claim necessarily affects the administration of the bankruptcy estate. If the Parties do not have an approved Settlement Agreement prior to the § 523 bar date, it is possible that Silverton may commence litigation before this Court to determine the validity, extent, and nondischargeability of Silverton's claim. That possible litigation will require the Parties to incur additional litigation costs that necessarily come with an evidentiary hearing and briefing schedule. Any litigation costs incurred by Debtor will be paid by Debtor's income, which is an estate asset. A compromise that resolves all pending litigation will save the parties expense, delay, and inconvenience associated with continuing prosecution of these matters. Therefore, this factor weighs in favor of approving the Settlement Agreement.

**D.      The Paramount Interest of Creditors.**

This factor weighs heavily in favor of approving the Settlement Agreement. Silverton is the estate's largest creditor. Debtor scheduled a total of $350,803.66 in general unsecured claims. *See* Schedule E/F ECF No. 1. Debtor's most recent plan is a 100% plan where Debtor proposes to make $476,825.00 in plan payments. *See* ECF No. 28. Debtor also proposes to use an undetermined amount of funds from the sale of his home to make additional payments to fund the Chapter 13 Plan. These proposed plan payments include payments to Silverton under the Settlement Agreement. If the Settlement Agreement is not approved, then Debtor would be unable to fund a 100% plan given Silverton's $2.1 million claim. Meaning that creditors would share in a pro rata distribution, well below the 100% proposed distribution under Debtor's current plan. The Settlement Agreement, therefore, ensures that creditors will receive the highest possible distribution while simultaneously resolving highly contested litigation. Therefore, this factor weighs heavily in favor of approving the Settlement Agreement.

/ / /

/ / /

/ / /

/ / /

15746-02/3083189.docx

### III. CONCLUSION

For the foregoing reasons, Kathryn Silverton and the Debtor respectfully request that the Court (i) grant this joint motion to approve the compromise of claims, and (ii) enter an order approving the Settlement Agreement.

Dated this 8th day of March 2024.

**HOLLEY DRIGGS**

 /s/ R. McKay Holley
Stacy H. Rubin, Esq. (NV Bar No. 9298)
R. McKay Holley, Esq. (NV Bar No. 15934)
300 South Fourth Street, Suite 1600
Las Vegas, Nevada 89101
Telephone:702/791-0308

*Attorneys for Kathryn Silverton, trustee and beneficiary of the Loretta M. Kuhn Revocable Trust*

Dated this 8th day of March 2024.

**DEMETRAS LAW**

 /s/ J. Craig Demetras
J. Craig Demetras, Esq. (NV Bar No. 4246)
230 E. Liberty Street
Reno, Nevada 89501
Telephone: 775/348-4600
*Attorneys for Debtor*

## **CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of Holley Driggs and that, on the 8th day of March, I caused to be served a true and correct copy of JOINT MOTION TO APPROVE COMPROMISE UNDER RULE 9019 in the following manner:

☒ (ELECTRONIC SERVICE)  Under Local Rule 5005 of the United States Bankruptcy Court for the District of Nevada, the above-referenced document was electronically filed on the date hereof and served through the Notice of Electronic Filing automatically generated by that Court's facilities.

☐ (UNITED STATES MAIL)  By depositing a copy of the above-referenced document for mailing in the United States Mail, first-class postage prepaid, at Las Vegas, Nevada, to the parties listed on the attached service list, at their last known mailing addresses, on the date above written.

☐ (OVERNIGHT COURIER)  By depositing a true and correct copy of the above-referenced document for overnight delivery via Federal Express, at a collection facility maintained for such purpose, addressed to the parties on the attached service list, at their last known delivery address, on the date above written.

☐ (FACSIMILE)  By serving a true and correct copy of the above-referenced document via facsimile, to the facsimile numbers indicated, to those listed on the attached service list, and on the date written above.

       /s/ Olivia Swibies  
       An employee of Holley Driggs

15746-02/3083189.docx